

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-08-340-CV

RHINO REAL ESTATE INVESTMENTS, INC. AND THE RHINO GROUP, L.P.                  APPELLANTS

V.

CITY OF RUNAWAY BAY, TEXAS                  APPELLEE

------------

### FROM THE 271ST DISTRICT COURT OF WISE COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. INTRODUCTION

The primary issue we address in this appeal is whether Appellee City of Runaway Bay, Texas (City) has extended the building permit requirements it adopted in Ordinance 251 to its extraterritorial jurisdiction (ETJ). Because we hold that it has not, we will reverse the trial court's judgment to the contrary,

---

[1] *See* Tex. R. App. P. 47.4.

and we will reverse the trial court's award of attorney's fees to the City and remand that issue to the trial court for its reconsideration.

## II. PROCEDURAL AND BACKGROUND FACTS

The City is a general law town. Appellants Rhino Real Estate Investments, Inc. and the Rhino Group, L.P. (collectively referred to as "Rhino") own twelve lots located within the City's ETJ. The plats for these lots were approved before Rhino purchased them and before the City was incorporated in 1979 or 1980. The City sued Rhino, seeking a temporary restraining order, temporary injunction, and permanent injunction requiring Rhino to comply with the City's building permit requirements before building homes on these twelve lots. Pursuant to local government code section 212.002,[2] the City adopted Ordinance 251 providing for subdivision regulation within the City's municipal limits.[3] The City claimed in its suit that it was authorized by local government code section 212.003 to extend the application of Ordinance 251 to its ETJ

---

[2] Tex. Local Gov't Code Ann. § 212.002 (Vernon 2008).

[3] Ordinance 251 consists of forty-eight pages. It contains provisions for subdividing land; filing preliminary and final plats and plans; and designing streets and alleys, storm sewers, sanitary sewers, water mains, and utility services. Interestingly, Ordinance 251, at least the copy contained in our record, contains no provisions dealing with the construction of buildings, but because neither party disputes that Ordinance 251 is the City's building code, we do not address this issue. Runaway Bay, Tex., Ordinance 251 (1999).

2

and that it did so via Ordinance 430, adopted on September 19, 2006.[4] Thus, the City's suit for temporary restraining order, temporary injunction, and permanent injunction sought to enforce Ordinances 251 and 430 by enjoining Rhino from violating these Ordinances; the City claimed that Rhino was required to obtain building permits, pay inspection fees, and meet other requirements of Ordinance 251 before building homes on its twelve lots located in the City's ETJ.

The trial court signed an order granting the City's request for a temporary restraining order. Rhino filed an answer and a counterclaim for declaratory relief, alleging in part that the platting of Rhino's lots was completed prior to

---

[4] The City makes these same arguments on appeal. Rhino points out, however, that subchapter A of local government code chapter 212 is titled "Regulation of Subdivisions" and that section 212.002 is set forth in subchapter A. Consequently, Rhino argues that "this subchapter says nothing about building in general or permits in specific" and does not confer authority on the City to extend its *building code* as opposed to "*rules governing plats and subdivisions*" to its ETJ, especially in light of section 212.049 (set forth in subchapter B), which provides that "this subchapter does not authorize the municipality to require municipal building permits or otherwise enforce the municipality's building code in its [ETJ]." *See* Tex. Local Gov't Code Ann. § 212.049; *see also Milestone Potranco Dev., Ltd. v. City of San Antonio*, No. 04-08-00479-CV, 2009 WL 1471881, at *1–3 (Tex. App.—San Antonio May 27, 2009, no pet. h.) (recognizing city had extended application of "Tree Ordinance"—that was related to rules governing plats and subdivisions—to its ETJ). Based on our disposition of Rhino's third issue, however, we need not address this argument by Rhino. *See* Tex. R. App. P. 47.1. That is, regardless of whether or not the City has authority to extend the application of its building code to its ETJ, Ordinance 430 did not do that here.

3

the adoption of Ordinance 430 on September 19, 2006, and that, consequently, chapter 245 of the local government code prohibited application of Ordinance 430 to Rhino's projects.

Eventually, the parties entered into a "Joint Final Pre-Trial Order" stipulating to certain uncontested facts. The case proceeded to a bench trial on the contested facts. The trial court signed a final judgment granting a declaratory judgment for the City that Ordinances 251 and 430 applied to subdivisions within the City's ETJ and required building permits, inspections, approvals, and payment of related fees for development of property in the City's ETJ and that Rhino's actions in developing the twelve lots at issue without complying with Ordinances 251 and 430 violated the City's ordinances. The final judgment permanently enjoined Rhino from developing the lots at issue in a manner in violation of Ordinances 251 and 430 and awarded the City $35,801.00 in attorney's fees pursuant to the declaratory judgment act. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008). The judgment provided that Rhino take nothing on its counterclaim.

Rhino perfected this appeal.

4

### III. No Ordinance Exists Extending
### application of Ordinance 251 to the City's ETJ

In its third issue, Rhino argues that the trial court's judgment is erroneous because it orders Rhino to obtain building permits and to comply with Ordinance 251 when "[t]he City introduced no evidence that its city council enacted an ordinance expressly extending its building code to new structures in its ETJ." The City argues in this appeal, as it did in the trial court, that the City (1) was authorized by local government code section 212.002 to adopt regulations requiring building permits and applicable inspections for subdivision development and that it had adopted such regulations via Ordinance 251, and (2) was authorized by local government code section 212.003 to extend the application of Ordinance 251 to its ETJ and that it did so via Ordinance 430.

Section 212.002 of the local government code provides that,

> After a public hearing on the matter, the governing body of a municipality may adopt rules governing plats and subdivisions of land within the municipality's jurisdiction to promote the health, safety, morals, or general welfare of the municipality and the safe, orderly, and healthful development of the municipality.

Tex. Loc. Gov't Code Ann. § 212.002. And section 212.003, titled "Extension of Rules to Extraterritorial Jurisdiction," provides in pertinent part that the governing body of a municipality by ordinance may extend to the extraterritorial

5

jurisdiction of the municipality the application of municipal ordinances adopted under Section 212.002. *Id.* § 212.003.

Thus, even assuming the City's argument that it possesses authority under section 212.002 to extend building code ordinances to its ETJ (which Rhino disputes, but we need not decide because of our disposition of Rhino's third issue), the City must do so by ordinance as set forth in section 212.003. *See id.*; *City of Austin v. Jamail*, 662 S.W.2d 779, 782 (Tex. App.—Austin 1983, writ dism'd) (recognizing municipality must have specific statutory authority to enforce ordinances in the municipality's ETJ). The City claims it did extend application of Ordinance 251's building code requirements to its ETJ by enacting Ordinance 430.

Ordinance 430 provides, in pertinent part:

**AN ORDINANCE OF THE CITY OF RUNAWAY BAY, TEXAS AMENDING APPENDIX 1, SECTION 26.00 OF THE CODE OF ORDINANCES TO PROVIDING FOR BUILDING PERMIT FEES FOR PROPERTIES LOCATED IN THE CITY LIMITS AND THE EXTRA TERRITORIAL JURISDICTION OF THE CITY . . . .**

**BE IT ORDAINED BY THE CITY COUNCIL OF THE CITY OF RUNAWAY BAY, TEXAS:**

**SECTION 1**: That Appendix 1, Section 26.00 of the Code of Ordinance Building Department shall read:

ADD: (A).

*Building permits fees for properties located* inside the city limits and *outside the city limits (extra territorial jurisdiction) are due with the building permit application* and are as follows:

    (1).    Living areas . . . . . . . . . . . .$.60 per square feet.

    (2).    Inspection Fees . . . . . . .. . .. $.60 per square feet.

[Italics added.] The City claims that the italicized language above, i.e., that "[b]uilding permits fees for properties located . . . outside the city limits (extra territorial jurisdiction) are due with the building permit application," satisfies local government code section 212.003's requirement that an ordinance be enacted to extend application of any municipal ordinance adopted under section 212.002 to the City's ETJ. *See* Tex. Loc. Gov't Code Ann. § 212.003. The City argues that this one sentence makes all of the provisions of the forty-eight-page Ordinance 251 applicable to the City's ETJ.

"Municipal ordinances are interpreted by the same rules of construction that apply to statutes." *Bd. of Adjustment v. Wende*, 92 S.W.3d 424, 430 (Tex. 2002); *Howeth Invs., Inc. v. City of Hedwig Village*, 259 S.W.3d 877, 904–05 (Tex. App.—Houston [1st Dist.] 2008, pet. denied) (citing *SWZ, Inc. v. Bd. of Adjustment of City of Fort Worth*, 985 S.W.2d 268, 270 (Tex. App.—Fort Worth 1999, pet. denied)). Statutory interpretation is a question of law*. Howeth Invs., Inc.*, 259 S.W.3d at 904–05. When the construction of municipal ordinances is involved, as when statutory construction is involved,

our primary duty is to carry out the intentions of the municipality's legislative body. *Bolton v. Sparks*, 362 S.W.2d 946, 951 (Tex. 1962); *City of Dallas v. Blanton*, 200 S.W.3d 266, 277 (Tex. App.—Dallas 2006, no pet.). In carrying out this duty, we look first to the plain meaning of the words. *Wende*, 92 S.W.3d at 430. If the language is unambiguous, we interpret the ordinance using its plain language unless that interpretation leads to absurd results. *See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc.*, 145 S.W.3d 170, 177 (Tex. 2004).

We begin by noting that Ordinance 251 by its express terms applies only to subdivisions within the City that are "created after the final approval of this document"; that is, after March 16, 1999. Runaway Bay, Tex., Ordinance 251 (1999). Rhino's twelve lots are not within the City and were not created after March 16, 1999. Thus, it is undisputed that Ordinance 251 does not apply to Rhino's lots unless, as the City contends, Ordinance 430 extended application of Ordinance 251 to the City's ETJ.

Turning to Ordinance 430, it does not expressly amend or reference Ordinance 251. Runaway Bay, Tex., Ordinance 430 (2006). Ordinance 430 by its terms amends Appendix 1, Section 26.00 of the Code of Ordinance Building Department. *Id*. Neither the Code of Ordinance Building Department nor Appendix 1 was admitted into evidence at trial, nor were they included in

8

our record on appeal. Thus, the actual document that Ordinance 430 by its terms was enacted to amend was not before the trial court and is not before us.

Giving the words of Ordinance 430 their plain meaning, the ordinance simply amends appendix 1, section 26.00 of the code of ordinances to set a fee for building permits and inspections in the City's ETJ. Imposing a requirement for a "building permit fee" in the City's ETJ does not seem in anyway to equate to the adoption of an entire building code in the City's ETJ. *Accord City of Coppell v. Gen. Homes Corp.*, 763 S.W.2d 448, 452, 454 (Tex. App.—Dallas 1988, writ denied) (ruling on claim that city "never passed any ordinances authorizing [it] to assess or collect the disputed fees" by reviewing ordinances relied upon by city and holding that ordinances relied upon by city did not in fact authorize city to collect water tapping fees). Nothing in the plain language of Ordinance 430 purports to extend the City's building code to its ETJ. *See* Tex. Gov't Code Ann. § 311.011 (Vernon 2005) (providing that in construing a statute—or here, an ordinance—words are to be given their common meaning); *City of Coppell*, 763 S.W.2d at 448.

Additionally, the preamble to Ordinance 430 expressly states that the purpose of the ordinance is "providing for building permit fees for properties located in the city limits and the extra territorial jurisdiction of the city," not to

9

extend the building code in its entirety to the City's ETJ. Runaway Bay, Tex., Ordinance 430. In construing Ordinance 430, we are authorized to consider the object sought to be obtained and the preamble, and they do not support the City's contention that Ordinance 430 extended the building code to its ETJ. *See* Tex. Gov't Code Ann. § 311.023.

In short, based on the record before us, we hold that Ordinance 430 does not extend the application of the City's building code to its ETJ. We sustain Rhino's third issue.

### IV. ATTORNEY'S FEES

In their fourth issue, Rhino conditionally challenges the award of trial and appellate attorney's fees to the City; Rhino claims that if we reverse the trial court's judgment, then we remand the issue of attorney's fees to the trial court. Rhino makes no other challenge to the trial court's attorney's fees award.

Both Rhino and the City sought a declaratory judgment in the trial court. A trial court may award costs and reasonable attorney's fees as are equitable and just in a declaratory judgment proceeding. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (Vernon 2008). Although a trial court possesses discretion in a declaratory judgment action to award attorney's fees to the nonprevailing party, when, as here, it awards attorney's fees to the prevailing party in a declaratory judgment action, and we reverse the trial court's

10

declaratory judgment, we are required to remand the attorney's fees issue to the trial court for its reconsideration in light of our reversal.  *See Hartsell v. Town of Talty*, 130 S.W.3d 325, 329 (Tex. App.—Dallas 2004, pet. denied). We sustain Rhino's fourth issue.

## V.  CONCLUSION

Having sustained Rhino's third issue, we reverse the trial court's declaratory judgment for the City.  Based on our disposition of this issue, it is not necessary for us to reach Rhino's first or second issues.  *See* Tex. R. App. P. 47.1.  Having sustained Rhino's fourth issue, we remand the issue of attorney's fees to the trial court for its reconsideration.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DELIVERED:  July 23, 2009

11